IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-01854-CNS-KAS

HSS INC.,

      Plaintiff,

v.

EVOLUTION CONSULTING, LLC,

      Defendant.

---

## ORDER

---

## I.  INTRODUCTION

Plaintiff HSS Inc. provides security services for healthcare facilities. HSS contracted with Defendant Evolution Consulting, LLC to perform criminal-background checks for its workers. This lawsuit involves the background check of one former HSS employee—Cesar Almazan.

Evolution performed Mr. Almazan's background check and did not find any criminal record. HSS therefore hired, or at least retained, Mr. Almazan. According to the Complaint, however, Mr. Almazan does have a criminal record as a "violent felon" because he pled no contest to a single assault charge one month before Evolution completed his background check.

A year after HSS hired Mr. Almazan, he allegedly assaulted two patients at a medical center in California. The patients sued HSS—but not Evolution—in California state court for, among other things, negligently hiring Mr. Almazan. In the instant action, HSS has alleged that Evolution negligently performed Mr. Almazan's background check and then breached the parties' consulting agreement which required Evolution to defend and indemnify HSS against third-party claims, including the California lawsuits, which resulted from Evolution's negligence.

There are five outstanding motions[1]:

(1)    Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 81);

(2)    Plaintiff's Motion for Partial Summary Judgment on its Breach of Contract and Declaratory Judgment Claims (ECF No. 44);

(3)    Defendant's Motion to Strike Exhibits D, F, G, H, K, L, and M to Plaintiff's Motion (ECF No. 54);

(4)    Defendant's Motion to Strike Exhibit S to Plaintiff's Reply Brief (ECF No. 55); and

(5)    Defendant's Motion to Strike Plaintiff's Substituted Exhibit D to Plaintiff's Motion (ECF No. 57).

For the reasons explained in this Order, the Court GRANTS Plaintiff's Motion for Leave to File First Amended Complaint, GRANTS in part and DENIES in part HSS's Motion, and DENIES Evolution's various Motions to Strike.

---

[1] The Court refers to Plaintiff's Motion for Partial Summary Judgment as the "Motion" throughout this Order. The Court will use the full motion name when referring to the other pending motions.

## II.   BACKGROUND[2]

HSS is a Colorado corporation that provides security services in healthcare facilities and other "high-risk security environments" (ECF No. 44 at 3). Evolution is a New York limited liability company that performs criminal-background checks for pre-employment applicants (*id.*; ECF No. 1, ¶¶ 2, 8).

On October 1, 2015, Plaintiff contracted with CHA Hollywood Presbyterian Medical Center, L.P. (HPMC) to provide security personnel and staffing at HPMC's Los Angeles facility (ECF No. 44 at 3; ECF No. 1, ¶ 7). HSS affirmed that its personnel satisfied HPMC's hiring criteria, including that its security personnel had successfully passed background checks (ECF No. 44 at 3).

On June 30, 2017, HSS and Evolution entered into a contract where Evolution agreed to perform background investigations for HSS job candidates (*id.* at 3–4; ECF No. 45 at 5; ECF No. 44-5 (Evolution Consulting Services Agreement) at 9–15). The agreement required Evolution to maintain "commercial general liability [CGL], . . . and errors & omissions [E&O] insurance" (ECF No. 44-5 at 2). The insurance provision provided that "[t]he insurance policies shall name [HSS] as an additional insured with a waiver of subrogation for matters covered by this Agreement" (*id.*). Finally, Evolution agreed to "indemnify, defend and hold harmless" HSS "from and against any and all inter

---

[2] The following factual recitation is drawn from HSS's Motion (ECF No. 44), Evolution's response (ECF No. 45), HSS's reply (ECF No. 46), and certain exhibits and affidavits accompanying each. To the extent the parties disagree over key facts, the Court sets forth the relevant factual dispute for clarity. For purposes of the analysis below, the Court construes these facts in the light most favorable to Evolution, the non-moving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997).

party and/or third party demands, claims, lawsuits, assessments, judgments, settlements, fines, liabilities, damages, costs and expenses, including reasonable attorney's fees and other costs of defense, which result from the negligence, or willful misconduct of [Evolution], . . . under this Agreement" (*id.* at 2–3).

This civil action lawsuit focuses on the background investigation of Cesar Almazan. On June 5, 2018, HSS requested that Evolution perform a background check on Mr. Almazan (ECF No. 45-4, ¶ 5), which Evolution completed the following day (*id.*). Evolution determined that Mr. Almazan had no prior criminal record in California despite apparently being a felon (ECF No. 1, ¶¶ 13, 15; ECF No. 18, ¶ 13).[3] HSS therefore hired and subsequently retained Mr. Almazan as a security guard (ECF No. 46, ¶ 4).[4]

---

[3] HSS alleges that Mr. Almazan did, in fact, have a criminal conviction in California; he supposedly pled no contest to an assault charge that is likely to produce "great bodily injury"—which is classified as a violent felony (ECF No. 1, ¶¶ 15–17). According to the Complaint, a violent felony conviction disqualifies any candidate from employment with HSS as a security officer, and HSS would not have hired Mr. Almazan (*id.*, ¶ 18). HSS, however, failed to provide any competent evidence to support these facts in its Motion or reply nor did it assert these facts in its "Statement of Undisputed Facts." In its Answer, Evolution denied these allegations (ECF No. 18). Although Ms. Richards's Declaration Part 2 alludes to Almazan's alleged felony conviction, she provides no support whatsoever (ECF No. 46-1, ¶ 6 ("The Evolution background check did not detect Almazan's felony conviction.").

[4] In its response, Evolution argued that "it is a *fact* that, **before** HSS had requested Almazan's background check report on June 5, 2018, HSS had **already hired** Almazan as a security guard; this occurred in or around May 2018" (ECF No. 45 at 1 (italics and bold in response)). Evolution, however, failed to provide competent evidence to support this fact, citing allegations made in the Dolphin Complaints (ECF No. 45 at 5). The Court cannot accept as true allegations made in the Dolphin Complaints. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (when taking judicial notice, documents such as court records "may only be considered to show their contents, not to prove the truth of matters asserted therein"). Nonetheless, in its reply, HSS provided competent evidence showing that it hired Mr. Almazan on June 30, 2018 (ECF No. 46, ¶ 4), and Evolution did not challenge that evidence.

A little over a year after HSS hired Mr. Almazan, he was involved in a physical altercation with two patients at HPMC (ECF No. 44, ¶¶ 10–11). The patients, brothers Jerroll and Erroll Dolphin, sued HSS, HPMC, Mr. Almazan, and one other HSS security guard for (1) battery; (2) elder abuse; (3) intentional infliction of emotional distress; (4) negligence; and (5) negligent hiring, training, retention, and supervision (the Dolphin Lawsuits or Dolphin Complaints) (*id.*, ¶ 11; ECF No. 45 at 5–6).[5] The Dolphin brothers did not name Evolution as a defendant nor did they mention Evolution in their complaints (ECF No. 45 at 6).

On July 28, 2021, HSS tendered to Evolution the defense and indemnity of the Dolphin Lawsuits (ECF No. 44, ¶ 13). Then, on August 11, 2021, HSS requested a full copy of all insurance policies, including all additional-insured endorsements (*id.*, ¶ 14). On August 17, 2021, Evolution denied the request for a copy of the insurance policies and denied the tender, but Evolution provided a certificate of insurance from its CGL insurer, Ohio Security Insurance Company (*id.*, ¶¶ 15–16).[6] On October 7, 2021, HSS then tendered the Dolphin Lawsuits directly to Ohio (*id.*, ¶ 16).

---

[5] The Court takes judicial notice of the Dolphin Complaints. *St. Louis Baptist Temple, Inc. v. F.D.I.C.,* 605 F.2d 1169, 1172 (10th Cir.1979) (district court may take judicial notice of related proceedings *sua sponte* ).

[6] Ohio Security Insurance Company appears to be the underwriting company for Evolution's CGL Policy, whereas Ohio Casualty Insurance Company appears to be the underwriting company for Evolution's Umbrella Policy (*see* ECF No. 44-6 at 1; ECF No. 45 at 6). Except where quoted directly by the parties, the Court will refer to Ohio Security and Ohio Casualty collectively as Ohio.

Ohio denied HSS's tender, supposedly "relying on the fact that HSS was never named as a named additional insured on Evolution's general commercial liability policy" (*id.*, ¶ 17 (citing ECF No. 44-6, "Ohio Security letter denying tender")). Although Evolution does not directly deny this purported undisputed fact, Evolution explains that the Ohio policy contains an automatic additional-insured provision (ECF No. 45 at 13). Indeed, Ohio's letter, which cites the policy, says as much: "HSS is nowhere named in Ohio Security's CGL policy by name as an additional insured. However, the Businessowners Liability Extension Endorsement, form BP 79 96 07 10, *contains an automatic additional insured provision*" (ECF No. 44-6 at 3 (emphasis added)).[7]

Ohio denied coverage to Evolution under the professional services exclusion (ECF No. 46 at 9; ECF No. 44–6 at 1). HSS then learned that Evolution had tendered the claim to its E&O insurance carrier, Ironshore (ECF No. 44, ¶ 17). In early January 2022, HSS claims to have put Ironshore "on notice of the claim" (*id.*, ¶ 19). Evolution disputes this fact, arguing that the email from HSS's coverage counsel to Ironshore merely requested copies of policy and a status of the claim (ECF No. 45 at 6). As of the filing of HSS's Motion, HSS states that Ironshore had not responded to HSS's request (ECF No. 44, ¶ 20). Again, Evolution disputes this fact, arguing that it "appears HSS already received Ironshore's response" because "Ohio Casualty appears to be a Liberty Mutual/Ironshore acquired entity" (ECF No. 45 at 6).

On March 8, 2022, Evolution's counsel denied HSS's tender of defense, stating "that Evolution does not have any contractual obligation to defend and indemnify HSS in

---

[7] The actual Ohio policy is not part of the record.

connection with this matter" (*id.*, ¶ 21; ECF No. 44-13 at 1). HSS then filed this lawsuit on July 27, 2022 (ECF No. 1).

### III.   LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if under the substantive law it is essential to the proper disposition of the claim.'" *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quotations omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears "the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 670–71. If met, "the

burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations and quotations omitted).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## IV.  ANALYSIS

The Court first addresses HSS's Motion for Leave to File First Amended Complaint. It then turns to HSS's Motion, where HSS first asks the Court to rule as a matter of law that Evolution had a contractual duty to defend HSS in the Dolphin Lawsuits. It then asks the Court to rule that Evolution had a contractual duty to endorse HSS as an additional insured on its policies of insurance, and that Evolution breached that duty (ECF No. 44 at 9). Finally, the Court addresses Evolution's various Motions to Strike.

### A.    Motion for Leave to File First Amended Complaint

HSS's filed its motion for leave on November 17, 2023 (ECF No. 81). HSS seeks to amend the Complaint to add as a party its CGL carrier, Hartford Fire Insurance Company (*id.*, ¶ 2). According to HSS, HSS incurred a "relatively [] small portion of in [sic] attorney's fees," but Hartford paid most of the fees, costs, and settlement amount

to resolve the Dolphin Lawsuits (*id.*). HSS also seeks to add pre- and post-judgment interest to its prayer for relief, acknowledging that it "failed to plead" this relief in its Complaint (*id.*, ¶ 9). Evolution does not oppose amendment to add pre- and post-judgment interest, but it opposes the joinder (ECF No. 82).  Evolution raises several arguments, but it primarily argues that HSS's motion is untimely and that amendment will be prejudicial to Evolution's defense (*id.* at 6–15). The Court rejects both arguments.

On September 26, 2022, the parties submitted a joint proposed scheduling order where they agreed to a deadline of November 17, 2023, for the joinder of parties and amendment of pleadings (ECF No. 17). The Court entered that order the following month (ECF No. 23). Despite various scheduling order *extensions*, the amendment deadline never changed. Therefore, not only was HSS's motion timely, but Evolution also provided written consent to this deadline. *See* Fed. R. Civ. P. 15(a)(2) (a party may amend its pleading "with the opposing party's written consent or the court's leave").

In regard to Evolution's purported prejudice, the Court is not persuaded. Setting aside that Evolution agreed to this deadline, fact discovery is ongoing (ECF No. 80). Evolution has seven weeks to complete the deposition it complains of prior to the February 23, 2024 discovery cutoff (ECF No. 82 at 1–2 (indicating that Evolution intends to take just one deposition of a Hartford witness)).

Accordingly, HSS's Motion for Leave to File First Amended Complaint is granted.[8]

---

[8] In the various briefings before the Court, both parties failed to comply with several provisions of the Court's Uniform Civil Practice Standards. For example, HSS filed a 15-page reply to its Motion for Leave to File First Amended Complaint (ECF No. 86) despite

**B.      Evolution's duty to defend**

The Court now turns to HSS's Motion for Partial Summary Judgment. HSS argues that it triggered Evolution's duty to defend when it tendered the Dolphin Lawsuits to Evolution (ECF No. 44 at 10–13). HSS relies on the so-called complaint rule, which provides that the duty to defend arises when an underlying complaint alleges facts which might fall within the coverage of the policy (*id.* at 10). Although the complaint rule most often applies in the insurance context, HSS argues that the rule applies with equal force in indemnity agreements (*id.*). Evolution argues that a contractual indemnitor's duty to defend is not subject to the complaint rule (ECF No. 45 at 8–9). Evolution instead contends that its duty to defend HSS was not triggered because the Dolphin Lawsuits did not "specifically allege facts of Evolution's negligence" (*id.* at 10). Evolution goes on to argue that it is not required to defend against HSS's negligence; rather, Evolution is only required to defend HSS against third-party lawsuits if Evolution itself is negligent or engaged in willful misconduct, both of which Evolution denies (*id.*).

1.      *Construing indemnity agreements*

The construction of a contract is a question of law for the court. *B & B Livery, Inc. v. Riehl,* 960 P.2d 134, 136 (Colo. 1998).[9] "An indemnity agreement is subject to the same

---

the 10-page limit. CNS Civ. Practice Standard 10.1(c)(1). HSS also failed on comply with CNS Civ. Practice Standard 10.1(a). For Evolution's part, in its opposition to HSS's Motion, it ignored the requirements set forth in CNS Civ. Prac. Standard 7.1D(b). Moving forward the Court will strike or deny any motion or brief that fails to comply with the practice standards.

[9] The parties agree that Colorado law governs this dispute (ECF No. 44 at 8; ECF No. 44-5 at 4 ("The parties expressly agree that this Agreement and the enforcement of the rights and obligations hereunder shall be governed by and construed in accordance with the laws of the State of Colorado . . . .")).

rules of construction that govern contracts generally." *Mid Century Ins. Co. v. Gates Rubber Co.,* 43 P.3d 737, 739 (Colo. App. 2002). Under Colorado law, the Court's primary obligation in interpreting a contract is to "ascertain and effectuate the intent of the parties as determined primarily from the language of the contract." *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.,* 109 P.3d 969, 974 (Colo. 2005). Further, indemnity agreements should be strictly construed. *See Pub. Serv. Co. of Colo. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1284 (Colo. 1992).

If, after applying the above principles, the Court concludes that the agreement is unambiguous, it must apply the terms as written. *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998). A contract provision is ambiguous "if it is fairly susceptible to more than one interpretation." *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) (citation and quotations omitted). Any ambiguity "will be resolved against the party seeking indemnity." *Williams v. White Mountain Const. Co.*, 749 P.2d 423, 426 (Colo. 1988).

### 2. *Duty to defend and indemnify*

The duty to defend is closely related to the duty to indemnify, but these duties are "separate and distinct." *Lafarge N. Am., Inc. v. K.E.C.I. Colorado, Inc.*, 250 P.3d 682, 688 (Colo. App. 2010) (quoting *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). The duty to defend is triggered more easily than the duty to indemnify. *Id.* Moreover, the former is a question of law whereas the latter is a question of fact. *Am. Econ. Ins. Co. v. Schoolcraft*, 551 F. Supp. 2d 1235, 1239 (D. Colo. 2007) ("Whether an insurer has a duty to defend is a question of law."); *Hecla Mining Co. v. New Hampshire*

*Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991) (whether the duty to indemnify is triggered is "a question of fact to be decided by the trier of fact").

### 3.    *The Complaint Rule*

Under the complaint rule, also called the "four corners" or "complaint allegation" rule, a duty to defend is triggered whenever the allegations in the underlying complaint raise the possibility that the insurer may have a duty to defend. *TCD, Inc. v. Am. Fam. Mut. Ins. Co.*, 296 P.3d 255, 259 (Colo. App. 2012). The Colorado Supreme Court has "consistently held that an insurer's duty to defend arises solely from the complaint in the underlying action." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 827 (Colo. 2004). The rule typically is implicated when a plaintiff sues a defendant covered by an insurance policy. If the defendant's insurance company refuses to defend the defendant in the underlying lawsuit, the defendant may then sue the insurer for its failure to defend. *See Chavez v. Arizona Auto. Ins. Co.*, 947 F.3d 642, 645–46 (10th Cir. 2020). The question in the second lawsuit is whether the allegations in the underlying complaint "would plausibly yield insurance coverage." *Id.*; *Const. Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) ("Generally, the duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage . . . ." (emphasis in original)). In determining whether the underlying complaint makes a claim covered by the insured's policy, Colorado courts look only at the factual allegations in the complaint and the policy at issue. *TCD, Inc.*, 296 P.3d at 259.

Colorado courts have extended the complaint rule to commercial contracts. In *Lafarge*, the Colorado Court of Appeals considered whether a subcontractor owed a duty

to defend the general contractor in an underlying suit brought by a motorist. 250 P.3d at 683–84. Lafarge North America was the general contractor for a highway construction project administered by the Colorado Department of Transportation (CDOT). *Id.* at 684. Lafarge subcontracted with K.E.C.I. Colorado to provide traffic-control services on the project. *Id.* A motorcyclist was killed, and his spouse was injured, after driving onto a highway onramp and colliding with a piece of construction equipment that a Lafarge employee had parked on the onramp. *Id.* The surviving spouse sued Lafarge, the Lafarge employee who parked the construction equipment on the entrance ramp, and KECI for negligence. *Id.* Lafarge demanded that K.E.C.I. indemnify and defend it pursuant to a provision in the subcontract that obligated K.E.C.I. to

> [i]ndemnify [Lafarge] against and save [it] harmless from any and all claims, suit, or liability for injuries to property, injuries to persons including death, and from any other claims, suits, or liability on account of [sic], arising in whole or in part of [sic] any act or omission of [K.E.C.I.], or any of [its] officers, agents, employees or servants . . . .

*Id.* at 685 (alterations in original).

The district court granted summary judgment in favor of Lafarge on its duty-to-defend claim. *Id.* at 688. On appeal K.E.C.I. argued that it did not owe a duty to defend because its indemnity obligations did not extend beyond K.E.C.I.'s own negligence, if any. *Id.* The court rejected this argument and held that "K.E.C.I.'s duty to defend was triggered so long as the injured party alleged facts even potentially triggering the obligation to indemnify." *Id.* And there, the surviving spouse's complaint "did so, specifically alleging that both Lafarge and K.E.C.I. were negligent and that the injuries were the result of their individual and collective negligent conduct." *Id.* (citations and quotations omitted). The

court therefore upheld the district court's ruling that K.E.C.I. had breached its duty to defend. *Id.*

Evolution attempts to distinguish *Lafarge* by merely arguing that the "Dolphin Actions do not even mention Evolution, let alone 'specifically allege' facts of Evolution's negligence that would 'even potentially trigger[] the obligation to indemnify'" (ECF No. 45 at 10) (alteration in response)). The Court is not convinced by Evolution's narrow reading of *Lafarge*. Evolution does not cite any case to suggest that the underlying lawsuit *must* specifically name or mention the indemnitor. Requiring such before triggering the duty to defend would vastly alter the liberal rule that the duty "arises where the alleged facts even *potentially* fall within the scope of coverage . . . ." *Const. Assocs.*, 930 P.2d at 563 (emphasis in original). Where, as here, the injured party would likely have no knowledge of an indemnitor's existence, it would not make sense to require that the indemnitor be specifically mentioned. The Court thus finds that the complaint rule applies in this case.[10]

---

[10] Applying the complaint rule to non-insurance indemnity agreements appears to be the general rule. *Shaughnessy v. KC Rainbow Dev. Co.,* No. 09–51 ACK–LEK, 2010 WL 157486, at *5 (D. Haw. Jan. 15, 2010) (under Hawai'i law, the duty to defend based on the complaint allegation rule applies to non-insurance indemnity contracts); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 918, 936 (W.D. Ky. 2007) (same, applying Ohio law); *J.R. Simplot Co. v. Chevron Pipe Line Co.*, No. 04 Civ. 624(DAK), 2006 WL 2796887, at *12 n.12 (D. Utah Sept. 27, 2006) (predicting that Utah courts would apply complaint rule to indemnity agreements); *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 255 P.3d 268, 278–79 (Nev. 2011) ("To invoke the duty to defend, the plaintiffs' complaint must have sufficiently alleged negligence on the part of Reyburn, or their claims must have concerned Reyburn's scope of work for the project."); *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 10, 146 N.M. 717, 721, 213 P.3d 1146, 1150 ("Because the duty to defend is a contractual obligation, we hold that regardless of the type of contract containing it, the duty to defend arises when the language of a complaint states a claim that falls within the terms of the contract."); *English v. BGP Int'l, Inc.,* 174 S.W.3d 366, 372 & n.6 (Tex. Ct. App. 2005) ("[W]e find little reason why the principles regarding an insurer's duty to defend should not apply with

### 4.   Evolution breached its duty to defend

Turning to the Dolphin Lawsuits, though they do not mention Evolution, the lawsuits clearly allege facts triggering Evolution's duty to indemnify, including:

- At all relevant times Almazan was an employee of HSS, working as a security guard assigned to HPMC.

- "HSS employed security guards who are not qualified. At least one guard has a felony history and violent conduct."

- "HSS's background check process failed to prevent ALMAZAN from working, even though he had a felony conviction for assault by means of force likely to produce great bodily injury. . . . The nature of the crime indicates that HSS should not have employed Almazan, but it did."

- "[While in the hospital,] ALMAZAN [attacked] Dr. Dolphin. . . In doing so, ALMAZAN cause[d] severe injuries to Dr. Dolphin."

- "As ERROLL DOLPHIN exited the hospital room he entered the hallway where [he] was confronted by ALMAZAN. . . . ALMAZAN attacked ERROLL DOLPHIN by violent physical means . . . ."

- HSS was negligent in "hiring . . . ALMAZAN . . . which was a substantial factor in causing Dr. Dolphin's harm."

- HSS was negligent in "hiring . . . ALMAZAN . . . which was a substantial factor in causing ERROL DOLPHIN harm."

---

equal force to an indemnitor's contractual promise to defend its indemnitee."); *Herson v. New Bos. Garden Corp.*, 667 N.E.2d 907, 914 (Mass. App. Ct. 1996) ("The duty to defend in the subject clause is a duty independent of and broader than the duty to indemnify."); *Hillman v. Leland E. Burns, Inc.*, 257 Cal. Rptr. 535, 540 (Cal. Ct. App. 1989) (in dispute between contractor and architect, failing to determine duty to defend when claim is filed would lead to absurd result); *St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.,* 475 P.2d 69, 71 (Or. 1970) (holding that the defendant's contractual duty to defend was identical to that of an insurer); *but see In re Oil Spill by the Oil Rig Deepwater Horizon,* 841 F. Supp. 2d 988, 1009 (E.D. La. 2012) (rejecting this approach under federal maritime law); *Tateosian v. State*, 2007 VT 136, ¶ 13, 183 Vt. 57, 62–63, 945 A.2d 833, 838 (2007) (declining to apply insurance law to determine contractual duty to defend).

(ECF No. 44-7, ¶¶ 8, 38, 83, 29, 92; ECF No. 44-8, ¶¶ 8, 30, 46, 100). The Court fails to see how these allegations do not trigger Evolution's obligation to indemnify. Evolution concedes that it agreed to "perform background check services" for HSS (ECF No. 45 at 4). If Evolution seriously questioned its obligation to defend, the "appropriate course of action" would have been to "provide a defense to [HSS] under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated." *Hecla*, 811 P.2d at 1089.[11]

Accordingly, the Court finds that Evolution breached its duty to defend HSS in the Dolphin Lawsuits.[12]

* * *

In summary, the Court finds that Evolution had a duty to defend HSS against the Dolphin Lawsuits, as those complaints allege facts that squarely triggered Evolution's obligation to indemnify HSS. The Court however expresses no opinion on the amount of damages HSS sustained from Evolution's breach as that evidence is not part of the record

---

[11] Evolution argues that the duty to defend is moot because HSS has settled the underlying lawsuits (ECF No. 45 at 14–15). The Court disagrees. In *Lafarge*, Lafarge settled the claims with the motorist for $700,000 in return for a release. *Lafarge N. Am., Inc.*, 250 P.3d at 684. Yet the Colorado Court of Appeals held that K.E.C.I. breached its duty to defend. *Id.* at 688.

[12] HSS argues that the "distinction between the insurance versus commercial context is further illusory here as Defendant's failure to procure insurance on behalf of Plaintiff pursuant to its contractual obligation to do so makes Evolution Plaintiff's de facto insurer" (ECF No. 44 at 11 n.1). The Court declines to rule on this issue because, among other reasons, it is premature.

nor is it briefed.[13]

### C.   Evolution's obligation to name HSS has an additional insured

HSS asks the Court to rule as a matter of law that Evolution had a contractual duty to endorse HSS as an additional insured on its insurance policies, and that Evolution breached that duty (ECF No. 44 at 9).

The consulting agreement provides that Evolution will carry insurance for "commercial general liability . . . and errors & omissions insurance . . . . The *insurance policies shall name [HSS] as an additional insured with a waiver of subrogation for matters covered by this Agreement*" (ECF No. 44-5 at 2 (emphasis added)). This much is undisputed (ECF No. 44, ¶ 8; ECF No. 45 at 4). The only remaining issue is whether Evolution breached this duty.

HSS contends that "Evolution did not name HSS as an additional insured on any of its insurance policies" (ECF No. 44, ¶ 9), including specifically Evolution's CGL policy, issued by Ohio, and its E&O policy, issued by Ironshore (ECF No. 44-3, ¶¶ 1, 8–9). Evolution argues in response that HSS is an additional insured under "the Policy" (ECF No. 45 at 15). The Court addresses the two insurance policies in turn.

---

[13] Evolution, however, argues that it is only required to defend and indemnify HSS for the damages resulting from Evolution's own negligence and not cover those losses resulting from HSS's own negligence (ECF No. 45 at 5). The Court agrees. "[A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties," and such a provision must contain "clear and unequivocal language to that effect." *Lafarge N. Am., Inc.*, 250 P.3d at 686 (quoting *Pub. Serv. Co.*, 829 P.2d at 1283-84). The Court finds that Evolution's indemnification clause lacks clear and unequivocal language purporting to cover HSS's own negligence, and the Court cannot say that it is "firmly convinced" that the parties intended for Evolution to indemnify HSS for HHS's own negligence.

1.    *Evolution's CGL Policy*

Ohio is Evolution's CGL insurer (ECF No. 45 at 6, ECF No. 46 at 8–9). Ms. Richards, HSS's in-house counsel, states that Evolution failed to endorse or list HSS as an additional insured on this policy (*id.*, ¶ 8). The record evidence, however, suggests otherwise.

In a letter from Ohio to HSS's outside counsel, Geri Williams, Ohio states that although "HSS is nowhere named in Ohio Security's CGL policy by name as an additional insured[], the Businessowners Liability Extension Endorsement, form BP 79 96 07 10, *contains an automatic additional insured provision* . . . . (ECF No. 44-6 at 3 (emphasis added)). Evolution states that this automatic additional insured provision shows that it complied with its insurance obligations under the agreement (ECF No. 45 at 6).

At the very least there is a fact dispute as to whether HSS complied with its obligation to add HSS as an additional insured *on its CGL policy*, making summary judgment inappropriate on this issue. *Adler*, 144 F.3d at 670–71.

2.    *Evolution's E&O Policy*

As noted, HSS argues that Evolution did not name HSS as an additional insured on *any* of its insurance policies, including its E&O policy. Although HSS did not attach the actual E&O policy to its Motion, it did in its reply (ECF No. 46-6 (Exhibit S)). Evolution attacks the admissibility of Exhibit S in its third motion to strike, arguing that HSS failed to authenticate the insurance policy or lay the proper foundation (ECF No. 55). HSS concedes as much but notes that Evolution produced this E&O policy in response to its Rule 26(a)(1)(A)(iv) disclosures (ECF No. 59, ¶¶ 2–3).

18

The Court can quickly dispense with Evolution's arguments. A party is not required to authenticate all documents to be considered on summary judgment. *See Houston Cas. Co. v. Swinerton Builders*, No. 20-CV-03558-NYW, 2022 WL 523434, at *3 (D. Colo. Feb. 22, 2022) (citing 10A Wright & Miller *et al.*, Federal Practice & Procedure § 2722 (4th ed. 2021)). Rule 56 only requires that the exhibit "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Here, Evolution produced this policy as part of its Rule 26 disclosures. Despite ample opportunity, Evolution made no argument that HSS will be unable to authenticate the E&O policy attached as Exhibit S. *See id.*

Evolution's lack-of-foundation argument fares no better. Although the Court can consider only admissible evidence when granting summary judgment, it is the "content or substance of the evidence" that must be admissible. *L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009) (citation and quotations omitted). At trial, HSS merely needs to call a witness from Evolution or Ironshore to testify, and in doing so, will lay the necessary foundation for this policy. *See Chase Mfg., Inc. v. Johns Manville Corp.*, 601 F. Supp. 3d 911, 921 (D. Colo. 2022), *aff'd in part and rev'd in part on other grounds*, 84 F.4th 1157 (10th Cir. 2023). The Court thus denies Evolution's Motion to Strike Exhibit S, and it turns to Evolution's E&O policy.

Unlike Evolution's CGL policy, its E&O policy does not contain a similar automatic additional-insured provision (ECF No. 46-6). Nor does it expressly name HSS as an additional insured. Indeed, except for its evidentiary arguments, which the Court rejected, Evolution makes no attempt to oppose HSS's Motion on this point. It is Evolution's obligation to oppose such an undisputed fact with competent evidence. *Adler*, 144 F.3d

at 671. Because it failed to do so, the Court is left with the undisputed fact that Evolution

failed to name HSS as an additional insured on its E&O policy (ECF No. 44, ¶ 9).

Accordingly, Evolution breached its contractual duty to name HSS as an additional

insured on its E&O policy.

\* \* \*

In sum, the Court denies HSS's request for declaratory judgment with respect to

Evolution's CGL policy but grants HSS's request with respect to Evolution's E&O policy.

### D.    Evolution's Motions to Strike

#### 1.    *Motion to Strike Exhibits D, F, G, H, K, L, and M to Plaintiff's Motion (ECF No. 54)*

Evolution moves to strike seven exhibits to HSS's Motion.[14] For Exhibits F, K, L,

and M, Evolution proffers the following evidentiary objections: (1) foundation, (2)

relevance, (3) hearsay, and (4) authentication (and for Exhibit L only, "misstates the

evidence"). The Court overrules each objection.

The Court finds that the content and substance of these communications clearly

will be admissible at trial, *Mohawk Const.*, 577 F.3d at 1170, and Evolution has not argued

that these exhibits "cannot be presented in a form that would be admissible in evidence."

Fed. R. Civ. P. 56(c)(2). Nor could it. Exhibit F, for example, is a letter from Ohio to HSS's

coverage counsel, Geri Williams (ECF No. 44-6). And Exhibit M is a letter from Evolution's

counsel—on Evolution's counsel's letterhead—to HSS's coverage counsel (ECF No. 44-

13). The other exhibits are correspondence from HSS's coverage counsel (Exhibit K and

---

[14] The Court addresses Exhibit D below when it considers Evolution's Motion to Strike Substituted Exhibit D to Plaintiff's Motion (ECF No. 57).

L).

The Court further notes that it did not consider Exhibit K in its ruling, and it merely references Exhibits L and M as background. And for Exhibit F, the Court determined that, at a minimum, this exhibit creates a fact dispute concerning whether Evolution complied with its contractual obligations to add HSS has an additional insured on its CGL policy.

Therefore, the Court denies Evolution's motion to strike Exhibits F, K, L, and M.

Evolution next moves to strike the Dolphin Complaints pursuant to Fed. R. Evid. 104(b) and 901 (ECF No. 54 at 5). In response, HSS argues that a federal court may take judicial notice of public records (ECF No. 58 at 7–8). Evolution's only argument in reply is that HSS never requested that the Court take judicial notice (ECF No. 63 at 3).

True. In its Motion, HSS should have but did not request that this Court take judicial notice of the Dolphin Complaints. But where, as here, the challenged documents are publicly filed records, judicial notice is appropriate. *Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1028 (10th Cir. 2023) ("Typically, we take judicial notice of facts that are a matter of public record."); *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 742 (10th Cir. 2023) ("[A] federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue."). And even in the absence of a formal request for judicial notice, the Federal Rules of Evidence permit the Court to "take judicial notice on its own." Fed. R. Evid. 201(c)(1).

Accordingly, the Court elects to take judicial notice of the Dolphin Complaints. In doing so, the Court does not accept as true the allegations in the complaints. Rather, the Court merely considers the allegations to show their contents—that the Dolphin brothers

alleged that HSS was negligent in hiring Mr. Almazan because he is a violent felon. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (documents such as court records "may only be considered to show their contents, not to prove the truth of matters asserted therein"). Thus, the Court also denies Evolution's motion to strike Exhibits G and H.

> 2.     *Motion to Strike Exhibit S to Plaintiff's Reply Brief (ECF No. 55)*

For the reasons stated above, Evolution's Motion to Strike Exhibit S is denied.

> 3.     *Motion to Strike Substituted Exhibit D to Plaintiff's Motion (ECF No. 57)*

Initially HSS attempted to cite a screenshot of Evolution's website purporting to show that Evolution performs "meticulous background check services" for clients (ECF No. 44, ¶ 3). Evolution moved to strike this screenshot on four grounds: (1) foundation, (2) relevance, (3) lack of personal knowledge, (3) hearsay, and (4) authentication. The screenshot, however, related to fingerprinting and not background checks. HSS moved to substitute Exhibit D with the correct website screenshot (ECF No. 53). Evolution then moved to strike the substituted exhibit on the same grounds save the relevance objection (ECF No. 57).

Though it is well settled in this Circuit that a district court may take judicial notice of statements made on a party's website, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1257 (D. Colo. 2019), the Court finds it unnecessary to rely on Evolution's

website in its ruling on the Motion. The Court therefore DENIES as moot Evolution's

Motion to Strike Plaintiff's Substituted Exhibit D to Plaintiff's Motion (ECF No. 57).

## V.    CONCLUSION

Consistent with the above analysis, the Court ORDERS as follows:

(1)    HSS's Motion for Leave to File First Amended Complaint (ECF No. 81) is GRANTED; the Clerk of Court is directed to docket the First Amended Complaint (ECF No. 81-2) as the operative complaint;

(2)    Plaintiff's Motion for Partial Summary Judgment on its Breach of Contract and Declaratory Judgment Claims (ECF No. 44) is GRANTED in part and DENIED in part;

(3)    Defendant's Motion to Strike Exhibits D, F, G, H, K, L, and M to Plaintiff's Motion (ECF No. 54) is DENIED;

(4)    Defendant's Motion to Strike Exhibit S to Plaintiff's Reply Brief (ECF No. 55) is DENIED; and

(5)    Defendant's Motion to Strike Plaintiff's Substituted Exhibit D to Plaintiff's Motion (ECF No. 57) is DENIED as moot.

DATED this day of 9th day of January 2024.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge